IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CAMBRIDGE HEALTHCARE, LLC, *

Plaintiff, *

v. * Civil Action No. RDB-11-728

STAFFUS HEALTHCARE, LLC, *

Defendant. *

* * * * * * * * * * * * *

**MEMORANDUM OPINION**

Plaintiff Cambridge Healthcare, LLC ("Cambridge" or "Plaintiff") has filed this action alleging that Defendant StaffUS Healthcare, LLC ("StaffUS" or "Defendant") breached its contract with Cambridge by failing to pay for services Cambridge provided StaffUS. Currently pending before this Court is Cambridge's Motion for Summary Judgment (ECF No. 10). The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons that follow, Plaintiff Cambridge's Motion for Summary Judgment (ECF No. 10) is GRANTED.

BACKGROUND

Plaintiff Cambridge Healthcare, LLC is a staffing company organized under Virginia law and operating in Maryland. Pl.'s Compl. ¶¶ 1, 7, ECF No. 1. On December 1, 2009, Cambridge contracted with Defendant StaffUS Healthcare, LLC, a Florida staffing company that places healthcare professionals in temporary positions of employment.[1] Under the parties' contract, Cambridge agreed to recruit and screen healthcare professionals, and StaffUS agreed to market

[1] *Id.* ¶¶ 2, 8; Agreement, ECF No. 1-1. Cambridge and StaffUS agreed that Florida law would govern their contract. Agreement ¶ 12.

these professionals, who were Cambridge employees, to healthcare facilities across the United States. Pl.'s Compl. ¶¶ 9-10; Def.'s Answer ¶¶ 9-10, ECF No. 6. If StaffUS succeeded in placing a Cambridge employee at a healthcare facility, the facility would pay StaffUS for the work that the employee performed. Pl.'s Compl.
¶ 11; Def.'s Answer ¶ 11. In turn, StaffUS would pay Cambridge based on the hours of work performed by the employee. Pl.'s Compl. ¶ 12; Def.'s Answer ¶ 12.

Rick Carlson ("Mr. Carlson"), a former owner and president of StaffUS, signed the 2009 contract on behalf of StaffUS. Pl.'s Compl. Ex. 1, at 2. On June 1, 2010, Mr. Carlson sold StaffUS to James Bowen, Anna DeMauro, and Vincent J. DeMauro, and then departed the company. Def.'s Answer ¶ 8. James Bowen, Anna DeMauro, and Vincent J. DeMauro are the current owners of StaffUS. *Id.*

Pursuant to the parties' contract, StaffUS placed Cambridge's employees at healthcare facilities and remitted payments from the facilities to Cambridge. Starting with an invoice dated March 5, 2010, however, StaffUS began falling behind in its payments. Pl.'s Mot. Summ. J. 3, ECF No. 10. At present, thirty Cambridge invoices, from March 5, 2010, through September 30, 2010, remain outstanding. John LaHart Decl. ¶¶ 10-12, ECF No. 10-2. Cambridge informed StaffUS of these outstanding invoices. Pl.'s Mot. Summ. J. 10-11; Def.'s Opp. 3-6, ECF No. 11. StaffUS, however, did not make payments to Cambridge. Instead, StaffUS contacted Mr. Carlson several times, and facilitated conversations between Cambridge and Mr. Carlson, thinking that Mr. Carlson would resolve the dispute by paying the amounts due on the outstanding invoices. Def.'s Opp. 3-6.

On March 18, 2011, Cambridge filed suit against StaffUS, alleging breach of contract. Cambridge claims that StaffUS has failed to pay $178,167.25, the total amount due on the thirty unpaid or partially paid invoices. StaffUS asserts, on the other hand, that it has fulfilled its financial responsibilities to Cambridge. More specifically, StaffUS suggests that it is not obligated to remit payments for the Cambridge employees who were placed at healthcare facilities while Mr. Carlson owned StaffUS. Def.'s Opp. 7. Rather, StaffUS argues that Mr. Carlson remains individually liable for those debts.

In moving for summary judgment, Cambridge contends that StaffUS—not Mr. Carlson—was the counterparty to the contract and remains responsible for paying the outstanding invoices. Pl.'s Mot. Summ. J. 13. Cambridge marshals two arguments in support of its position that the issue of StaffUS's ownership is irrelevant to this breach of contract claim: Cambridge did not waive its contractual right to be paid by StaffUS for the work of the Cambridge employees, and it was not a party to the acquisition agreement between Mr. Carlson and StaffUS's current owners. *Id.*

In response to Cambridge's Motion for Summary Judgment, StaffUS makes two principal arguments. First, StaffUS claims that Cambridge is equitably estopped from pursuing this breach of contract claim. Def.'s Opp. 6-8. Second, StaffUS argues that Cambridge has failed to join a necessary and indispensable party under Federal Rule of Civil Procedure 19. *Id.* at 8-9.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party

seeking summary judgment "bears the initial responsibility of informing the district court of the basis of its motions and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quotations omitted). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id*. at 249.

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, this Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993). When a motion for summary judgment is properly made and supported, the nonmoving party must set out specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Anderson*, 477 U.S. at 249-50. This Court has previously explained that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

ANALYSIS

The sole issue to be determined in this breach of contract claim is whether StaffUS remains liable for debts relating to Cambridge employees whom StaffUS, under the direction of Mr. Carlson, placed at healthcare facilities. Cambridge argues that StaffUS should be held liable for breach of its contractual agreement to pay Cambridge for the work of its employees. Because Cambridge formed a contract with StaffUS, and not with Mr. Carlson, Cambridge argues that the ownership of StaffUS should not influence the outcome in this case. On the other hand, StaffUS suggests that these debts are the responsibility of Mr. Carlson, and not the company under its current ownership. Notably, StaffUS does not deny that Cambridge fully performed its duties under the contract, nor does it dispute that Cambridge is owed $178,167.25, recorded in the thirty outstanding invoices. StaffUS does argue, however, that Cambridge is equitably estopped from bringing this contract claim and that it failed to join Mr. Carlson, who is a necessary and indispensable party to this suit. This Court will first analyze the breach of contract claim before turning to StaffUS's two arguments for denying Cambridge's Motion for Summary Judgment.

**I. Breach of Contract Claim**

Cambridge has shown that StaffUS has failed to pay $178,167.25 in thirty outstanding invoices. *See* John LaHart Decl. ¶¶ 10-12; Mot. Summ. J. Exs. 3-32. StaffUS, in its Opposition memorandum, does not refute the amount owed or that Cambridge satisfied its contractual obligations. Rather, StaffUS claims that Mr. Carlson is responsible for these debts. Def.'s Opp. 4-6.

Florida law determines whether a successor owner assumes liabilities of the previous

business.[2] Florida follows the "traditional corporate law rule," which declines to impose liability on a successor unless:

> (1) the successor expressly or impliedly assumes obligations of the predecessor, (2) the transaction is a de facto merger, (3) the successor is a mere continuation of the predecessor, or (4) the transaction is a fraudulent effort to avoid liabilities of the predecessor.

*Corp. Express Office Prods., Inc. v. Phillips*, 847 So. 2d 406, 412 (Fla. 2003) (quoting *Bernard v. Kee Mfg. Co.*, 409 So. 2d 1047, 1049 (Fla. 1982)). The record in this case reflects that when Mr. Carlson left StaffUS, the new owners took control and continued the predecessor company. *See* Def.'s Answer ¶¶ 8, 14-17. Under the traditional corporate law rule, then, the debts owed to Cambridge remain the obligation of StaffUS. *See* Agreement ¶¶ 1, 2. StaffUS advances no argument to suggest that under Florida law Mr. Carlson remains the liable party. Accordingly, Cambridge is clearly entitled to judgment against StaffUS unless barred by equitable estoppel or, as Defendant suggests, a failure to join a necessary party to this action.

**II. Equitable Estoppel Claim**

StaffUS asserts that Cambridge is equitably estopped from bringing this contract claim, and thus its Motion for Summary Judgment should be denied. StaffUS points to e-mail correspondence between Cambridge and StaffUS in which Cambridge allegedly acknowledged that Mr. Carlson would be directly responsible for the debts and sought payment from Mr. Carlson. *See* Def.'s Opp. Exs. B-E.

To establish an equitable estoppel claim, StaffUS must prove three elements with clear and convincing evidence:

(1) [T]he party against whom estoppel is sought must have made a representation about a

---

[2] As noted *infra* note 1, Florida law applies to the parties' contract.

> material fact that is contrary to a position it later asserts; (2) the party claiming estoppel must have relied on that representation; and (3) the party seeking estoppel must have changed [its] position to [its] detriment based on the representation and [its] reliance on it.

*Watson Clinic v. Verzosa*, 816 So. 2d 832, 834 (Fla. Dist. Ct. App. 2002). Equitable estoppel is applied with great caution under Florida law. *Id.* Florida courts have instructed that equitable estoppel should be applied only when "one party lulls another party into a disadvantageous legal position . . . and where to refuse its application would be virtually to sanction a fraud." *Sacred Family Invs., Inc. v. Doral Supermarket, Inc.*, 20 So. 3d 412, 416 (Fla. Dist. Ct. App. 2009) (citations omitted).

StaffUS misses the mark in its equitable estoppel claim because it fails to demonstrate a representation by Cambridge about the outstanding invoices that is contrary to a position Cambridge later asserted. StaffUS relies on e-mail correspondence between StaffUS and Cambridge in order to show that Cambridge represented that the debts were solely Mr. Carlson's obligation. In one of the e-mails, a member of the Cambridge staff writes to James Bowen, a current owner of StaffUS, to inform him that she has created two account numbers, named "StaffUS-Rick" and "StaffUS-Jimmy," reflecting the debts owed to Cambridge. Peggy Taylor E-mail (Sept. 30, 2012), Def.'s Opp. Ex. B, ECF No. 11-2. StaffUS points to this action as evidence that Cambridge acknowledged that only Mr. Carlson would be liable for some of its debts. StaffUS fails to mention, though, that Cambridge made these separate account numbers at StaffUS's request. *See* Peggy Taylor E-mail (Sept. 29, 2010), Pl.'s Mot. Summ. J. Ex. 34, ECF No. 10-36. Equitable estoppel does not apply "[w]here the conduct asserted as the basis for an estoppel was brought about or directly encouraged by the party claiming the estoppel." 28 Am. Jur. 2d Estoppel and Waiver § 77. Because StaffUS requested separate account numbers,

Cambridge's agreement to follow StaffUS's order does not signify an acknowledgement that Cambridge was waiving its claims against StaffUS. These e-mails suggest only that Cambridge consistently sought repayment of its debts and was willing to work within the repayment scheme that StaffUS requested.

StaffUS also relies on several e-mails between StaffUS and Mr. Carlson. *See* E-mail Correspondence with James Bowen, Def.'s Opp. Exs. D, E, ECF Nos. 11-4, 11-5. In these e-mails, James Bowen is in communication with Cambridge regarding the outstanding invoices and attempts to facilitate conversation with Mr. Carlson. *Id.* In one of the e-mails, James Bowen asks Mr. Carlson why he has not spoken with Cambridge about the debts and suggests that a "token payment" to Cambridge "would go a long way to avoiding much worse conclusions." E-mail Correspondence with James Bowen, Def.'s Opp. Ex. E. Rather than bolstering StaffUS's claim for equitable estoppel, these e-mails suggest both that Cambridge continued to seek repayment from StaffUS and that StaffUS continued to be concerned with the repayment of the debts. Notably, StaffUS offers no evidence that Cambridge waived its contractual right to be repaid by StaffUS.

StaffUS's argument for equitable estoppel fails as a matter of law because it cannot show that it detrimentally relied on a contrary representation made by Cambridge. On the contrary, StaffUS's evidence shows that Cambridge consistently contacted StaffUS when seeking repayment of its debts, and that StaffUS remained cognizant of the debts it owed. Consequently, StaffUS has not satisfied its burden of pointing to specific evidence in the record that creates a genuine issue of material fact. *Celotex*, 477 U.S. at 324.

## III. Failure to Join a Necessary and Indispensable Party under Federal Rule of Civil Procedure 19

StaffUS also argues that Cambridge's Motion for Summary Judgment should be denied because Cambridge failed to join Mr. Carlson, a necessary and indispensable party, to this contract action. StaffUS asserts that without the presence of Mr. Carlson, this Court will be unable to shape an adequate judgment because Mr. Carlson is "directly related to the non-payment of Cambridge." Def.'s Opp. 9.

Under Federal Rule of Civil Procedure 19, a person must be joined as a party if "in that person's absence, the Court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A). If it is infeasible to join the party, then a court should consider whether an action should proceed without him. Fed. R. Civ. P. 19(b). A party is considered indispensable, thus warranting dismissal of the action, if a judgment rendered in his absence would result in prejudice or be inadequate. *Id.*

StaffUS fails to show why Mr. Carlson is a necessary and indispensable party. StaffUS claims that this Court would not be able to "parse the liability" for the outstanding debts between StaffUS and Mr. Carlson. However, the "complete relief" that Rule 19 is concerned with is relief between the current parties and not "between a party and the absent person whose joinder is sought." *United States v. County of Arlington*, 669 F.2d 925, 929 (4th Cir. 1982). Because StaffUS is contractually responsible for the debts owed to Cambridge, complete relief can be accorded. The two necessary and indispensable parties are before this Court—the party that fulfilled its contractual obligations but has not been fully paid, and the party that is contractually liable for the debts.

StaffUS's reliance on Rule 19 is unsuccessful, and it fails to show why summary

judgment should not be granted. This Court, therefore, grants summary judgment to Cambridge on its breach of contract claim. If StaffUS has a successful claim against Mr. Carlson, it may pursue that claim in a separate action, and judgment in this Court will present no barrier to suit.

CONCLUSION

For the reasons stated above, Plaintiff Cambridge Healthcare, LLC's Motion for Summary Judgment (ECF No. 10) is GRANTED. Judgment shall be entered in favor of Cambridge.

A separate Order follows.

Dated: September 19, 2012

/s/________________________________
Richard D. Bennett
United States District Judge